10840, 10841.   GREEN *v.* HINES, director-general:

and *vice versa.*

</div>

Under the pleadings and the facts in this case, upon which it was sought to recover for personal injuries received in stepping from a railroad train, the verdict rendered for the defendant was demanded by the evidence; and the motion for a new trial was properly overruled.

<div align="center">

DECIDED APRIL 14, 1920.

</div>

Action for damages; from Chatham superior court — Judge Meldrim.   June 26, 1919.

Mrs. Janie Green sued the Central of Georgia Railway Company. By amendment Walker D. Hines, director-general of railroads, was made defendant. The petition alleged: that the plaintiff went to the defendant's station at Savannah, with a relative, and as she entered the car she told the conductor that she "was assisting her relative in boarding the train with her baggage, and would enter the coach with her, to which the said conductor consented, and permitted petitioner to enter the coach, knowing that it was petitioner's purpose not to leave on said train, but to alight from the same prior to its departure;" that "for many years it had been the practice and custom of the defendant company always to sound a gong five minutes before any passenger-train departs, and so long continued and uniform has been this practice and custom that petitioner and the public generally who may be on board the trains of said company await the sound of the gong before leaving the same;" that "while petitioner was in the car, talking briefly with her relative, awaiting the sound of the gong to advise her to alight from the train, she ascertained that the time for the departure of the train was at hand and no gong had been sounded. Without awaiting the sound of the gong, she rose from her seat, while the train was still stationary, for the

purpose of leaving the car, and started towards the back door of the car, and while approaching said door the train began to move. Petitioner found that the rear door of the car was locked and was compelled to traverse the entire length of the car to the front door in order to alight from the front platform; the train in the meantime increasing its speed. Another lady whose name is unknown to petitioner, was likewise caught on the train in the same manner, and hastened to the front door in order to alight." " As soon as petitioner reached the front steps of the car she lifted her son down off of the steps — the train at that time not moving at such a rapid speed as to render it dangerous for petitioner to alight. After this, having placed her son upon the ground, she endeavored to step from the slowly moving train on to the concrete platform, but because of the motion of the train, in her effort to alight therefrom, her left foot was turned and twisted, and a small bone in the instep of her foot was broken.". Among other amendments the plaintiff alleged that she " entered the car by the front door thereof," and that she " remained in the coach with her relative from five to ten minutes." The grounds of negligence alleged were: " 1. Because the defendant company did not advise petitioner of the time for the train to start. 2. Because the said company failed in accordance with its usual and uniform custom to sound a gong, warning persons to leave the train. 3. Because the said defendant company needlessly and carelessly had locked the rear door of the car, thus preventing petitioner to alight from the same before it had gathered sufficient speed to injure petitioner. 4. Because the defendant company did not give petitioner a suitable and reasonable length of time to alight from the said train in safety." The defendant filed demurrers both general and special, and also filed a plea denying liability. After the petition had been amended to meet certain of the special demurrers, all the demurrers were overruled and the case proceeded to trial.

The plaintiff testified in part: that she was frequently at the station where she was injured; that " the gong always rang five minutes before the leaving time of the train;" that when she was entering the train she told the conductor that she was not going off on the train, but was there to see her sister-in-law off, and asked him if she " had time to go on the car and assist her with

her baggage, and he said 'yes';" that she "entered the coach at the forward end of it;" that this was "some fifteen or twenty minutes before the train was to leave;" that she sat on the arm of the seat occupied by her sister-in-law, some ten minutes or more;" that when the car began to get crowded she took her little boy, who was with her, and went to the back door, but, finding that it was locked, turned towards the front door, and before she reached that door the conductor cried "all aboard;" that when she reached the steps the train was moving; that she put her boy off safely; that when she stepped off, the speed of the train was gradually getting faster; that as she stepped off she lost her balance and stumbled. Plaintiff also swore: "If the back door had not been locked I would have had time enough to get off the car before the train started off. If the gong had been sounded five minutes before the train left I could have left before the train started. . Before I started to leave the car no one had notified anyone in the car that the train was about to move. . . When I got off the car the train was moving very slowly. I am not much judge of the speed of a train. I did not think it was dangerous to step off of the car when I did. If I [had] thought it was dangerous to do so I would not have stepped off the car as I did. I used very good care, the best I knew how, in stepping off the car."

The conductor's evidence was in part as follows: "I have no recollection of Mrs. Green getting on . . . I do not know how long before this occasion it had been when they stopped sounding the gong, but it had been some days. It had not rung since the custom ceased. It used to ring five minutes before the departure of the trains . . . We are required to announce at the two waiting-rooms, one white and one colored, and in front of the ticket-office in the station, the leaving time of this train. The conductor does that. I leave the train and go up to the station house and make the announcement at the places I have just stated. I did that on this day before this particular train left. The announcement is made five minutes before the departure of the train. I was away from my train five minutes before its departure, to make that announcement. I did not see this lady attempt to get off the train after I hollered 'all aboard.' I did not know that the lady was on the train and intended to get

off when I called 'all aboard.' I was standing near the front end of the first-class coach, the forward end, when I hollered 'all aboard.' I then walked to the rear of the coach and hollered 'all aboard' again. I announced it twice. The train did not move immediately after I called the first 'all aboard.' The rear door of this coach in question was locked. That is kept locked for the reason it is the requirement of the company for safety . . . It is to keep any one from getting on or off at that end of the coach with no protection at all. There is no employee of the company there at that end to look after them. After I gave the last 'all aboard' I stepped on the rear platform of the car. The train had proceeded just about one car-length, one passenger-coach length, when Mr. Dick, our employee. who was standing on the outside, threw his hand up as a signal, and says, 'A woman is getting off,' and I immediately pulled the bell-cord, and the train came to a stop. I saw the lady after the train stopped . . .I did not see the lady get off, and of course I can't say where she got off." Other witnesses testified, but the foregoing statement embraces all the material facts necessary to an adjudication of the issues involved. The trial resulted in a verdict for the defendant. The plaintiff made a motion for a new trial, which was overruled, and she excepted.

*Oliver & Oliver,* for plaintiff in error.

*H. W. Johnson,* contra.

BLOODWORTH, J. (After stating the foregoing facts).

In overruling the motion for a new trial the learned judge of the trial court wrote an opinion which covers all the grounds of the motion, and which is substantially correct. That opinion is as follows:

"The 1st, 2d, 3d and 4th grounds of the amended motion require no special consideration. Reference to the charge will show that they are not well founded. On the 5th amended ground: There was no request to charge, and even if there had been a request, it would not have been a proper charge. There was no evidence to justify the recital that the gong was broken. Some unknown man made such a statement not under oath. The statement was hearsay and had no probative value. Certainly I could not have charged as a fact that the company did not sound a warning of the train's departure. There was no evidence to

justify it, and the evidence of the conductor was to the contrary. Neither could I have charged 'that the company did not intend to sound a warning of the train's departure as it had done for many years.' What had it done for many years? That charge which it is contended I should have given is not only confusing and misleading, but it assumed facts not proven.

. "On the 6th ground of the amended motion: I charged, 'It must appear that the defendant was guilty of the alleged negligence set out in the petition, and that negligence must be shown to be the cause — the proximate cause — of the injury alleged to have been sustained.' I further charged, 'Now you take the case and without prejudice look at it. See what the truth of it is, and, if the defendant is liable in the way set out in the petition, then you would be authorized to find a verdict in favor of the plaintiff.' I had previously charged in these words: 'She avers that she has sustained *certain damages in the way set out in the petition, which you will have before you.*' The complaint is that I should have singled out a particular ground of negligence, and then charged that if the company was guilty of negligence contributing to the plaintiff's injury she would be entitled to recover. I hardly think that is the law.

"The 7th ground of the amended motion cannot be considered. It is elementary that each ground of the motion must be complete within itself. This ground is singularly violative of this principle. The 8th ground complains of the strong language used in cautioning the jury to do 'exact justice between the lady on one side and the defendant on the other.' Reference to the evidence shows that the case was between a lady with a sprained ankle and a soulless corporation that sees as much beauty in a crowbar as in a pretty foot. The case afforded a field where the flowers of rhetoric grew wild. The plaintiff not only had a sprained ankle with all of its horrors, but she 'couldn't get a cook last summer, and had neighbors to come in and see about the children.' Doubtless the plaintiff suffered very much from not having a cook in Savannah in the summer, but that suffering, bodily or mental, could hardly be ascribed to Mr. Hines, the director-general of railroads. Seriously, cases should be tried under the rules of law and evidence and without appeals to prejudice. No higher duty rests upon a judge than to see that a recovery is

based on exact justice. Cautionary charges can only be judged of in the light of the trial. I do not think that the criticisms are well founded.

"I do not think that the 11th and 14th grounds, both inclusive, require special consideration when the entire charge is read. In the 15th ground it is complained that I failed to charge, 'If the conductor knew that the gong was broken.' Certainly I should not have so charged. The only evidence on that point was the hearsay statement of some unknown man, alleged to have been made to the conductor *after the accident*. No charge should be given which is not authorized by the evidence."

Under the pleadings and the facts in this case, we think the verdict rendered was demanded by the evidence, and the motion for a new trial was properly overruled.      .

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Broyles, C. J., and Luke, J., concur.*